**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KIJANA CORNELIUS, | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:20-CV-01047 (JCH) |
| v. | : | |
| | : | |
| JOSE LUNA, | : | |
| RONALD PRESSLEY, | : | |
| CLAYTON HOWZE, | : | |
| RAY BRIGHT, and | : | |
| NIKKI CURRY, | : | |
| Defendants. | : | JUNE 13, 2024 |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 132)**

## I.    INTRODUCTION

Plaintiff Kijana Cornelius ("Cornelius") brings this action against defendants Jose Luna ("Officer Luna"), Ronald Pressley ("Officer Pressley"), Clayton Howze ("Officer Howze"), Ray Bright ("Officer Bright"), and Nikki Curry ("Officer Curry") under Section 1983 of title 42 of the United States Code and Connecticut state law.  See Second Amended Complaint ("Second Am. Compl.") (Doc. No. 65).  Cornelius alleges that the defendants, all of whom are law enforcement officers of the New Haven Police Department ("NHPD"), used excessive force against him.  See id.

Before this court is the defendants' Motion for Summary Judgment.  See Defendants' Motion for Summary Judgment ("Defs.' Mot.") (Doc. No. 132).  Cornelius opposes the Motion.  See Plaintiff's Reply to Defendants' Motion for Summary Judgment ("Pl.'s Opp.") (Doc. No. 136).  For the reasons set forth below, the Motion is granted in part and denied in part.

## II.    BACKGROUND

### A.    Factual Background[1]

On April 22, 2018, Cornelius was involved in an incident with another individual at a diner in New Haven.  See Plaintiff's Local Rule 56(a)2 Statement of Facts ("Pl.'s 56(a)2 Stmt.") ¶ 2 (Doc. No. 136-2); Defendants' Local Rule 56(a)1 Statement of Facts ("Defs.' 56(a)1 Stmt.") ¶ 2 (Doc. No. 132-2).  Police officers arrived and arrested Cornelius, handcuffing him and placing him in the rear of a police transport van, where he was transported to the NHPD station and brought to the intake area.  See Pl.'s 56(a)2 Stmt. ¶¶ 2-3, 5; Defs.' 56(a)1 Stmt. ¶¶ 2-3, 5.

The events that transpired in the intake area were recorded via video surveillance footage.[2]  See Intake Area Surveillance Footage ("Intake Footage"), Defs.' Ex. 3 to Affidavit of Manmeet Bhagtana (Doc. No. 132-5).  In the intake area, officers began asking Cornelius routine questions while he was standing at the desk.  See Pl.'s 56(a)2 Stmt. ¶ 7; Defs.' 56(a)1 Stmt. ¶ 7.  After a few minutes, Officer Howze removed the handcuffs form Cornelius.  See Intake Footage at 2:04-2:13.  Officer Howze then instructed Cornelius to turn around, step on the line, face the wall, and place both hands on the wall.  See id. at 2:34-2:41.  Cornelius did not immediately follow Officer Howze's instructions.  See id.  Consequently, Officer Howze had to reposition Cornelius to turn

---

[1] The court draws primarily from the parties' Local Rule 56(a) statements and supporting exhibits in summarizing the material facts.  As it must, the court construes all disputed facts in the light most favorable to Cornelius, the non-moving party.  It also notes where the facts are disputed.

[2] Both parties appear to agree that the video constitutes an accurate depiction of the events in question, though they also acknowledge that the video lacks sound.  See Pl.'s 56(a)2 Stmt. ¶ 6; Defs.' 56(a)1 Stmt. ¶ 6.  The parties also disagree, at times, as to what the video depicts.  Accordingly, although the court partially relies on the video in summarizing the material facts, it also takes care to note the disagreements between the parties as to what the video depicts.

around, face the wall, and move toward the line.  See id. at 2:41-2:45.  Nonetheless, the

video makes clear—and neither party contests—that Cornelius eventually turned

around and moved to the line, as instructed.  See id.  Immediately thereafter, Officer

Howze spoke to Cornelius and gestured toward the wall.  See id. at 2:47.  In response,

Cornelius placed his left hand on the wall; he did not, however, place his right hand on

the wall.  See id. at 2:48-2:49.  Then, over the course of approximately ten seconds,

Officer Howze repeatedly gestured to the wall and asked Cornelius to place his right

hand on the wall, but Cornelius did not do so.  See id. at 2:49-2:59; Pl.'s 56(a)2 Stmt.

¶ 14; Defs.' 56(a)1 Stmt. ¶ 14.  After repeated instructions from Officer Howze and the

intervention of Officer Curry, Cornelius placed his right hand on the wall.  See Intake

Footage at 2:56-3:01; Pl.'s 56(a)2 Stmt. ¶ 15; Defs.' 56(a)1 Stmt. ¶ 15.[3]

    After initially placing his right hand on the wall, Cornelius took his right hand off

the wall and gestured with it toward Officer Curry; in response, Officer Curry grabbed

Cornelius' right hand.  See Intake Footage at 3:06-3:08; Pl.'s 56(a)2 Stmt. ¶ 16; Defs.'

56(a)1 Stmt. ¶ 16.  The parties dispute what happened next.  The defendants contend

that Cornelius began wrestling and pulling away from the officers.  See Defs.' 56(a)1

Stmt. ¶ 17.  Cornelius denies that he was pulling away from and wrestling with the

officers.  See Pl.'s 56(a)2 Stmt. ¶ 17; Plaintiff's Deposition Transcript of Kijana Cornelius

("Pl.'s Cornelius Dep. Tr."), Pl.'s Ex. C, at 55:14-56:9 (Doc. No. 136-5).  Surveillance

footage depicts a struggle between Cornelius and Officers Howze and Curry for

approximately four to five seconds.  See Intake Footage at 3:08-3:12.  Officer Pressley

---

[3] Aside from defendants' use of the word "finally", plaintiff does not object to defendants'
Statement of Fact.  See Pl.'s 56(a)2 Stmt. ¶ 15.  It is therefore deemed admitted.  See D. Conn. L. Civ. R.
56(a)(2)(i)-(3).

then ran over to Cornelius and assisted Officers Howze and Curry in taking Cornelius down to the ground.  <u>See</u> Intake Footage at 3:12-3:17.

After bringing Cornelius to the ground, the officers placed him in handcuffs and stood up.  <u>See</u> Pl.'s 56(a)2 Stmt. ¶ 19; Defs.' 56(a)1 Stmt. ¶ 19; Intake Footage at 3:25-3:38.  For approximately two minutes, Cornelius remained on the ground, facedown and in handcuffs.  <u>See</u> Pl.'s 56(a)2 Stmt. ¶ 20; Defs.' 56(a)1 Stmt. ¶ 20; Intake Footage at 3:38-5:55.  Then, Cornelius sat up on his rear end and called Officer Curry a "bitch".  <u>See</u> Pl.'s 56(a)2 Stmt. ¶ 21; Defs.' 56(a)1 Stmt. ¶ 21; Intake Footage at 5:55-6:06.  Officer Luna then turned Cornelius around and placed him on his stomach.  <u>See</u> Intake Footage at 6:06-6:19.[4]  An officer then informed Cornelius that an emergency medical technician was enroute to the intake area to provide him with medical attention.  <u>See</u> Pl.'s 56(a)2 Stmt. ¶ 23; Defs.' 56(a)1 Stmt. ¶ 23.  Shortly thereafter, Cornelius told an officer that there was something wrong with his hand, and the officer checked it.  <u>See</u> Pl.'s 56(a)2 Stmt. ¶ 24; Defs.' 56(a)1 Stmt. ¶ 24.

The parties dispute what happened next.  The video depicts Cornelius moving his body and flailing his legs and Officers Howze, Pressley, Luna, and Curry holding him down.  <u>See</u> Intake Footage 7:03-7:20.  The defendants assert that Cornelius was attempting "to squirm away or get up."  <u>See</u> Defs.' 56(a)1 Stmt. ¶ 25.  Cornelius contests this assertion and posits that he was simply rotating his body "not to get away or resist", but rather to ensure that he was in a more comfortable position that made it

---

[4] The parties dispute the reason for why the officers turned Cornelius around and placed him back on his stomach.  The defendants contend it was "in response to him sitting up on his own", <u>see</u> Defs.' 56(a)1 Stmt. ¶ 22, while the plaintiff asserts that it may have been "in retaliation for calling Curry a bitch", <u>see</u> Pl.'s 56(a)2 Stmt. ¶ 22.

easier for him to breathe.  <u>See</u> Pl.'s 56(a)2 Stmt. ¶ 25.  Officers Curry and Luna continued to hold Cornelius down in a prone position.  <u>See</u> Intake Footage at 7:20-17:58.  After approximately ten minutes, Cornelius once again moved his body and began to flail his legs, and the officers responded by holding him down.  <u>See</u> <u>id.</u> at 7:58-18:10.  Officer Pressley then placed ankle cuffs on Cornelius while Officer Luna placed a spit mask on Cornelius' face.  <u>See</u> <u>id.</u> at 18:05-18:41.  Officers Cornelius, Howze, and Luna continued to hold Cornelius in a prone position.  <u>See</u> <u>id.</u> at 18:05-25:39.

The officers eventually "turn[ed] Cornelius over onto his back and s[at] him up." <u>See</u> Pl.'s 56(a)2 Stmt. ¶ 27; Defs.' 56(a)1 Stmt. ¶ 27; Intake Footage at 25:39-25:47.  A medical provider arrived to check on Cornelius, and Cornelius told the provider he did not need to be checked.  <u>See</u> Intake Footage at 25:49; Pl.'s 56(a)2 Stmt. ¶ 29; Defs.' 56(a)1 Stmt. ¶ 29.  Officer Luna and Officer Howze lifted Cornelius from the ground. <u>See</u> Pl.'s 56(a)2 Stmt. ¶ 28; Defs.' 56(a)1 Stmt. ¶ 28.  Cornelius asserts that Officers Luna and Howze dragged him up by his handcuffs, which the defendants dispute.[5]  <u>See</u> Plaintiff's Statement of Additional Material Facts ("Pl.'s AMF"), at ¶ 29 (Doc. No. 136-2). Cornelius was subsequently walked out of the intake area; in the hallway, the officers picked him up and carried him away.  <u>See</u> Pl.'s 56(a)2 Stmt. ¶ 30; Defs.' 56(a)1 Stmt. ¶ 30; Intake Footage at 29:43.

B.    <u>Procedural Background</u>

On July 23, 2020, Cornelius filed his original Complaint against the defendants. <u>See</u> Complaint (Doc. No. 1).  Cornelius then amended his Complaint twice with this

---

[5] It is not clear, from the video footage, whether this occurred.  <u>See</u> Intake Footage at 26:21-26:33.

court's leave.  See First Amended Complaint (Doc. No. 56); Second Am. Compl.  Count

One of the operative Complaint alleges excessive force, and the failure to intervene,

under section 1983 of title 42 of the United States Code against all defendants.  See

Second Am. Compl. ¶¶ 19-26.  Count Two alleges the discriminatory application of

excessive force, based on plaintiff's race, under section 1981 of title 42 of the United

States Code against all defendants.  See id. at ¶¶ 27-28.  Count Three seeks an award

of reasonable attorney's fees against all defendants.  See id. at ¶¶ 29-30.  Count Four

alleges a violation of Article First, Section 7 of the Connecticut Constitution against all

defendants.  See id. at ¶¶ 31-32.  Count Five alleges negligent infliction of emotional

distress against all defendants, see id. at ¶¶ 33-34, while Count Six alleges intentional

infliction of emotional distress against all defendants, see id. at ¶¶ 35-36.

During discovery, the defendants twice moved to dismiss this action due to

plaintiff's failure to comply with his discovery obligations.  See First Motion to Dismiss

(Doc. No.  116); Second Motion to Dismiss (Doc. No. 125).  The court denied both

Motions.  See Order (Doc. No. 122); Order (Doc. 128).

On January 17, 2024, the defendants moved for summary judgment, see Defs.'

Mot., which Cornelius has opposed, see Pl.'s Opp.  On January 30, 2024, thirteen days

after the defendants filed their Motion for Summary Judgment, the plaintiff moved to

amend his Complaint for the third time.  See Motion to Amend (Doc. No.133).  The court

denied the Motion to Amend, citing plaintiff's undue delay and the risk of unfair prejudice

to the defendants.  See Ruling on Third Motion to Amend ("MTA Ruling") (Doc. No.

140).

III.    **LEGAL STANDARD**

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016). If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

IV.    **DISCUSSION**

The defendants have moved for summary judgment as to each of Cornelius' claims. See Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Defs.' Mem.") (Doc. No. 132-1).

A.    Section 1983: Excessive Force

The defendants contend, based on various grounds, that Cornelius' section 1983 claims fail as a matter of law. See id.

> 1.    Whether Plaintiff Has Sued the Officers in their Official or Individual
>       Capacities

The defendants argue that the plaintiff's Complaint must be dismissed because it asserts claims against the defendants in their official capacities, rather than their individual capacities, and fails to plead the requisite elements of a <u>Monell</u> claim.  <u>See</u> Defs' Mem. at 2-4.  As the defendants correctly note, the Complaint alleges that, "[a]t all times mentioned herein, [the] defendants . . . were duly appointed officers of the police department of New Haven, Connecticut, acting in their official capacities."  <u>See</u> Second Am. Compl. at ¶ 6.  It otherwise does not specify whether the plaintiff is suing the officers in their individual or official capacities.[6]  <u>See</u> <u>id.</u>

Courts have recognized that complaints are often unclear as to whether a defendant is being sued in their official capacity, personal capacity, or both.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985).  "Where . . . doubt may exist as to whether an official is sued personally, in his official capacity or in both capacities, the course of proceedings ordinarily resolves the nature of the liability sought to be imposed."  <u>Rodriguez v. Phillips</u>, 66 F.3d 470, 482 (2d Cir. 1995).  The court must consider "the totality of the complaint as well as the course of the proceedings."  <u>Pesce v. City of New York</u>, No. 12-CV-8663, 2016 WL 1733465, at *2 (S.D.N.Y. Apr. 29, 2016) (quoting <u>Yorktown Med. Lab., Inc. v. Perales</u>, 948 F.2d 84, 89 (2d Cir. 1991)).

Here, the court cannot conclude that the plaintiff's inartful pleading warrants dismissal of his Section 1983 claim.  The operative Complaint sues the defendant

---

[6] As noted above, the court denied plaintiff's Motion to Amend, which sought, <u>inter alia</u>, to clarify that the plaintiff is suing the officers in their individual capacities.  In addition to citing undue delay and the risk of unfair prejudice to the defendants, the court noted that plaintiff failed to acknowledge this attempted clarification in either the Motion or the accompanying Memorandum, which this court saw as potentially indicative of bad faith.  <u>See</u> MTA Ruling at 5-6 (Doc. No. 140).

officers for conduct of which they were, at least partially, personally involved.[7]  It does not allege the requisite elements of a Monell claim.  It also seeks punitive damages, see Second Am. Compl. at 7, which are unavailable in official capacity suits, see Girard v. Howard, No. 19-CV-673, 2021 WL 1737758, at *4 (W.D.N.Y. May 3, 2021).  In response to plaintiff's Complaint, the defendants also pleaded the affirmative defense of qualified immunity, see Answer at 5 (Doc. No. 69), which only applies to suits against officials in their individual capacities, see Frank v. Relin, 1 F.3d 1317, 1327 (2d Cir. 1993).  Taken together, it is apparent from the totality of the Complaint and the course of the proceedings that the plaintiff is suing the defendants in their individual capacities.  See Pesce, 2016 WL 1733465, at *2 (finding lawsuit was brought against defendants in their official capacities where, inter alia, there were "no allegations in the complaint as to either [defendants'] personal involvement in the alleged" conduct and "the defendants did not raise defenses that would be relevant if [the plaintiff] were suing the individual defendants in their individual capacities").

The defendants' request to dismiss the Complaint on the ground that plaintiff has failed to adequately plead an individual capacity claim is therefore denied.

> 2.  Whether the Fourth Amendment Applies to Plaintiff's Excessive Force Claim

The defendants also assert that Cornelius' excessive force claim fails as a matter of law because the Fourteenth Amendment, rather than the Fourth Amendment, applies

---

[7] Although the plaintiff has subsequently conceded that Officer Bright was not personally involved in the alleged uses of excessive force at issue in this case, see Pl.'s Opp. at 24-25; Section IV.C, supra, the operative Complaint alleges Officer Bright's personal involvement., see Second Am. Compl. ¶ 17.

to the defendants' alleged use of excessive force, and Cornelius failed to plead a Fourteenth Amendment claim.  See Defs.' Mem. at 8-10.

Excessive force claims can be brought under the Fourth, Fourteenth, or Eighth Amendment.[8]  See Edrei v. Maguire, 892 F.3d 525, 533 (2d Cir. 2018).  The Fourth Amendment applies to claims of excessive force arising "in the course of an arrest, investigatory stop, or other 'seizure'", see Graham v. Connor, 490 U.S. 386, 395 (1989), while the Fourteenth Amendment applies to pretrial detainees, see Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).  Although the exact boundaries of this distinction have yet to be clearly defined, most courts in this Circuit have analyzed claims of excessive force arising after arrest but prior to arraignment under the Fourth Amendment.  See, e.g., Jenkins v. City of Hartford, No. 22-CV-01289, 2024 WL 1157342, at *5 (D. Conn. Mar. 18, 2024) (citing Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989)); Franks v. New Rochelle Police Dep't, No. 13-CV-636, 2015 WL 4922906, at *9 (S.D.N.Y. Aug. 18, 2015); Lemmo v. McKoy, No. 08-CV-4264, 2011 WL 843974, at *4 (E.D.N.Y. Mar. 8, 2011).

Here, it appears that the alleged use of excessive force occurred shortly after Cornelius was taken into custody, while the plaintiff was being processed in the intake area, and well before any arraignment or appearance before a judge occurred.  Based on these specific circumstances, the court concludes that Cornelius' claim for excessive force is best analyzed under the Fourth Amendment, rather than the Fourteenth Amendment.  The court therefore applies the Fourth Amendment to plaintiff's excessive

_____

[8] The Eighth Amendment applies to excessive force claims brought by post-conviction inmates. See Edrei v. Maguire, 892 F.3d 525, 533 (2d Cir. 2018).  Because Cornelius was not incarcerated for a criminal conviction at the time of the relevant conduct, the Eighth Amendment does not apply.

force claim and denies the defendants' request to dismiss the claim on the ground that it is improperly pled.

3.    Whether the Defendants' Use of Excessive Force Was Objectively Reasonable

Cornelius claims that the defendant officers engaged in excessive force by (1) bringing him down to the ground when he was not actively resisting and (2) lifting him up by the handcuffs. See Second Am Compl.  The defendants contend that the use of force was objectively reasonable under the circumstances.  See Defs.' Mem. at 11-14.

As an initial matter, the court notes that, in his Opposition, the plaintiff also seeks to hold the defendants liable for improperly holding the plaintiff in a prone position, with his hands cuffed, for an extended period of time.  See Pl.'s Opp. at 19-24.  As noted above, the court previously denied plaintiff's Motion to Amend his Complaint to add these new factual allegations, noting that plaintiff had waited until after the close of discovery and the filing of defendants' Motion for Summary Judgment to move to amend.  See MTA Ruling.  In turn, the court concludes that plaintiff must be limited to the factual allegations that he made in his operative Complaint.  The operative Complaint alleges that, "[a]s a result of being grabbed and violently thrown to the ground and then lifted from the floor by the handcuffs, the plaintiff, Kijana Cornelius sustained severe, painful and permanent injuries . . . ."  See Second Am. Compl. at ¶¶ 12-14, 17.  It does not allege that the defendants improperly placed Cornelius in a prone position for an extended period of time.  Because the defendants lacked fair notice that plaintiff intended to raise these factual allegations as part of his excessive force claim, the court will not consider them at the summary judgment stage.  See Beckman v. U.S. Postal Serv., 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) ("Although a

complaint need not correctly plead every legal theory supporting the claim . . . at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense."); Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 219-21 (N.D.N.Y. 2008) (declining to consider new factual allegations raised in opposition papers after close of discovery).

Courts analyze excessive force claims, brought pursuant to the Fourth Amendment, under the "objective reasonableness" standard, which requires courts to assess "whether the officers' actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). When conducting this analysis, courts consider various factors, including (1) "the severity of the crime at issue", (2) "whether the suspect pose[d] an immediate threat to the safety of the officers or others", and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. The Second Circuit has repeatedly cautioned that, "[g]iven the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004).

As noted above, most of the relevant events in this case were captured on surveillance footage. See Intake Footage. However, courts have repeatedly cautioned that video footage is not always conclusive at the summary judgment stage. "In certain circumstances, video evidence may be so clear and unambiguous that a court deciding a summary judgment motion may rely solely on the video, and need not afford weight to

conclusory or non-credible assertions that are inconsistent with the 'blatant' video evidence." Monahan v. City of New York, No. 20-CV-261, 2022 WL 954463, at *4 (S.D.N.Y. Mar. 30, 2022) (citing Scott v. Harris, 550 U.S. 372, 378-80 (2007)). Nonetheless, summary judgment is appropriate only if the video evidence is sufficient to blatantly contradict one party's version of events. See Davis v. Murphy, No. 12-CV-3297, 2018 WL 10070524, at *5 (S.D.N.Y. Sept. 24, 2018). "Instead, the appropriate course of action is to permit the jury an opportunity to resolve the parties' competing versions of events, in conjunction with the video, through the ordinary fact-finding processes in which juries engage." Cornell v. Vill. of Clayton, 20-CV-1283, 2023 WL 5965431, at *6 (N.D.N.Y. Sept. 13, 2023).

Here, viewing the video and other evidence in the light most favorable to the plaintiff, the court cannot conclude that the defendants' takedown of Cornelius was objectively reasonable. First, it is undisputed that Cornelius was arrested only for a misdemeanor crime.[9] Second, at the time that the takedown occurred, the plaintiff was in the intake area of the police station and surrounded by police officers, see Intake Footage, and the defendants do not appear to assert that Cornelius had weapons on hand or that they credibly believed he was armed.

Third, there is a genuine issue of material fact as to whether Cornelius was "actively resisting" the officers' commands just before the takedown. The video clearly shows—and Cornelius concedes—that he initially placed only his left hand on the wall

---

[9] Cornelius has asserted that he was arrested for breach of the peace in the second degree. See Pl.'s AMF ¶ 1. Although he has not proffered any direct evidence to confirm this assertion, Officer Bright testified that the crime was a misdemeanor crime and "wasn't a serious issue." See Plaintiff's Transcript of the Deposition of Ray Bright, Pl.'s Ex. H, at 10:1-10:10 (Doc. No. 136-10).

and did not immediately place his right hand on the wall, despite Officer Howze's instructions. See Intake Footage at 2:48-2:49. However, the video footage also makes clear that Cornelius placed his right hand on the wall after approximately ten seconds. See Intake Footage at 2:56-3:01. Although Cornelius lifted his right hand again shortly thereafter, the court cannot conclude that this action—and the ensuing struggle between the defendant officers and Cornelius—indisputably constituted "active resistance" by Cornelius sufficient to warrant an arm-bar takedown. It does not appear that Officer Curry verbally commanded Cornelius to place his right hand back on the wall before she grabbed his hand, see Plaintiff's Transcript of the Deposition of Ray Bright, Pl.'s Ex. H, at 40:19-40:23 (Doc. No. 136-10), and Cornelius denies that he was wrestling and pulling away from the officers in the moments before they conducted the arm-bar takedown, see Pl.'s 56(a)2 Stmt. ¶ 30; Pl.'s Cornelius Dep. Tr. at 55:14-56:9. Cornelius also continued to stand on the line and kept his left hand on the wall during the ensuing struggle. See Intake Footage at 3:06-3:17. The video footage of the incident does not, in this court's view, blatantly discredit Cornelius' version of events. See id.; accord O'Toole ex rel. Est. of Fratto v. Cnty. of Orange, No. 16-CV-2059, 2019 WL 1099721, at *13 (S.D.N.Y. Mar. 8, 2019) ("[I]t is not the [c]ourt's province to interpret the video—instead the [c]ourt suffices to say that the evidence raises factual issues that are clearly disputed."). A reasonable jury could view the surveillance footage of the takedown and find that Cornelius' movements, in the seconds just before the takedown, were caused by Officer Curry, Officer Howze, and later Officer Pressley grabbing and

jostling his right arm and body.[10]  A reasonable jury could therefore find, from the record evidence, that the takedown was not an objectively reasonable use of force under the circumstances.  See Amnesty Am., 361 F.3d at 123.  Accordingly, the court concludes that there is a genuine issue of material fact as to whether the officers' takedown of Cornelius constituted excessive force.

The court applies the same analysis to Cornelius' claim that Officer Luna and Officer Howze pulled Cornelius up by the handcuffs.  Cornelius asserts that both officers pulled him up from a sitting position to a standing position by yanking on his handcuffs, see Pl.'s AMF ¶ 29; Pl.'s Cornelius Dep. Tr. at 72:24-73:5, which the officers deny, see Defs.' Mem. at 18.  Although the video shows Officer Luna and Officer Howze lifting Cornelius up from a sitting position to a standing position, it does not clearly show whether they pulled him up by his handcuffs, see Intake Footage at 26:21-26:33, thus raising a genuine issue of material fact.  The footage also does not clearly show Cornelius resisting or pulling away from the officers in the moments before he was lifted. See id. at 26:05-26:33.  As such, under plaintiff's version of events, a reasonable jury could easily find that the officers engaged in excessive and unnecessary force by pulling a plaintiff who was not actively resisting up by his handcuffs.  Indeed, the defendants do not appear to contest this point in their Memorandum, instead arguing that such conduct would be protected by the doctrine of qualified immunity.  See Defs.' Mem. at 18.  The court therefore concludes that there is a genuine issue of material fact

---

[10] To be sure, a reasonable jury could also find that Cornelius was actively resisting the officers' attempts to have him place his right hand back on the wall.  It is for this reason that the court cannot conclude, as a matter of law, that the defendants' conduct was objectively reasonable under the circumstances.

as to whether Officer Luna and Officer Howze engaged in excessive force by pulling Cornelius up by his handcuffs.

In sum, the court concludes that there are genuine issues of material fact as to whether Officer Luna, Officer Howze, Officer Curry, and Officer Pressley used excessive force against Cornelius.

4.    Whether the Defendants Are Entitled to Qualified Immunity

However, the court's summary judgment inquiry does not end there.  The defendants have also raised the defense of qualified immunity with respect to Cornelius' excessive force claim.  Qualified immunity protects federal and state officials from suits for money damages and from unnecessary and burdensome trial proceedings.  See Coollick v. Hughes, 699 F.3d 211, 219 (2d Cir. 2012).  There are two questions that courts must consider when conducting the qualified immunity analysis: (1) whether the "officer[s'] conduct violated plaintiff's constitutional rights" and (2) whether the right was "clearly established at the time of defendant's actions[.]"  Zalaski v. City of Hartford, 723 F.3d 382, 388 (2d Cir. 2013).  "Where there are disputed issues of material fact, a determination of qualified immunity is often inappropriate at the summary judgment stage."  Connelly v. City of St. Albans, No. 21-CV-00291, 2024 WL 1834472 (D. Vt. Apr. 26, 2024).

As to the first prong of the qualified immunity inquiry, the court has already determined that there is a genuine issue of material fact as to whether the defendant officers engaged in excessive force, in violation of plaintiff's constitutional rights, when Officers Curry, Pressley, and Howze engaged in the takedown of plaintiff and when Officers Luna and Howze allegedly pulled plaintiff up by the handcuffs.  Because there

16

are genuine issues of material fact as to the first prong, the court cannot conclude that the defendants are entitled to qualified immunity on that basis.  See Moran v. Greco, No. 23-CV-901, 2024 WL 1597624, at *2-3 (2d Cir. Apr. 12, 2024) (noting that there are "genuine issues of material fact exist as to the first prong" where "a jury viewing the facts in the light most favorable to [the plaintiff] could conclude that, judged from the perspective of a reasonable officer on the scene, [the defendant officer's] actions constituted excessive force").

The defendants further contend that they are entitled to qualified immunity because, under the second prong, it was not "clearly established" that the officers' conduct violated the plaintiff's rights under the law.  See Defs.' Mem. at 14-19.  The Supreme Court has emphasized that, in determining whether a right was clearly established, the court may not define the right with a high level of generality; rather, "the clearly established right must be defined with specificity."  City of Escondido v. Emmons, 586 U.S. 38, 42 (2019).  In determining whether a right was clearly established, courts "consider the specificity with which a right is defined, the existence of Supreme Court or [Second Circuit] Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law."  Terebesi v. Torresso, 764 F.3d 217, 231 (2d Cir. 2014).  "For law to be clearly established, it is not necessary to identify a case directly on point.  But precedent must have spoken with sufficient clarity to have placed the constitutional question at issue beyond debate."  Mara v. Rilling, 921 F.3d 48, 68 (2d Cir. 2019).  "A plaintiff can prevail against a qualified immunity defense [at the summary judgment stage] by raising a genuine issue of material fact as to whether the officers' conduct violated clearly established law and as

to whether 'officers of reasonable competence could disagree on the legality of the defendant[s'] actions.'" Usavage v. Port Auth. of N.Y. & N.J., 932 F. Supp. 2d 575, 593 (S.D.N.Y. 2013) (quoting Green v. Montgomery, 219 F.3d 52, 59 (2d Cir. 2000)).

As the court has already determined, there are genuine issues of material fact regarding the alleged uses of excessive force that cannot be resolved at the summary judgment stage. In turn, the court concludes that the officers' conduct, viewed in the light most favorable to the plaintiff, would have violated clearly established law. The Second Circuit has held that, as of April 2015—approximately three years prior to the incident in this case—"it was clearly established at the time of the incident that an officer could not use significant force against an individual who was no longer resisting arrest and posing no threat to the safety of officers or other individuals . . . ." Jones v. Treubig, 963 F.3d 214, 240 (2d Cir. 2020). In Jones v. Treubig, the Second Circuit relied heavily on a prior case, Tracy v. Freshwater, issued in 2010, which concluded that a defendant officer's use of pepper spray "against an arrestee no longer posing an immediate threat" constituted a violation of the arrestee's clearly established rights. See id. at 226 (citing Tracy v. Freshwater, 623 F.3d 90, 98 (2d Cir. 2010)). In doing so, the Jones court emphasized the breadth of Tracy's holding, noting that "the explicit focus of Tracy's Fourth Amendment analysis was on the officer's significant use of force in a gratuitous and excessive manner during an arrest, rather than the particular mode of that force." See id. Thus, the Second Circuit determined, "following Tracy, it was clearly established that an officer's significant use of force against an arrestee who was no longer resisting and who posed no threat to the safety of officers or others—whether

such force was by pepper spray, taser, or any other similar use of significant force—violates the Fourth Amendment."[11]  See id.

 As discussed above, the parties dispute whether, prior to the takedown, Cornelius was actively resisting.  Indeed, the record evidence is inconclusive on this point.  It is undisputed that Cornelius did not immediately comply with Officer Howze's instructions to place his right hand on the wall.  It is also undisputed that, shortly after placing his right hand on the wall, Cornelius lifted it up again while speaking to Officer Curry.  The court cannot say, however, that these actions by Cornelius constituted "active resistance" or otherwise posed a threat to the safety of the officers.  The video, viewed in the light most favorable to the plaintiff, shows that Cornelius eventually complied in placing his left hand and then his right hand onto the wall, and that he kept his feet on the line and his left hand on the wall even after he lifted up his right hand while speaking to Officer Curry.  See Intake Footage at 2:56-3:17.  Cornelius denies wrestling and pulling away from the officers in the seconds before the takedown, and the video evidence does not clearly discredit his testimony.  Moreover, it is undisputed that Officers Pressley, Curry, and Howze used an arm-bar takedown maneuver to bring Cornelius to the ground.  Cornelius has testified that he was "slamm[ed] . . . aggressively into the cement."  See Pl.'s Cornelius Dep. Tr. at 56:21-56:23.  A reasonable jury could potentially find that the specific takedown maneuver used by the officers constituted disproportionate and "significant force".  See Meli v. City of

---

[11] The Jones court also strongly suggested that this rule applies even in situations where the arrestee was unrestrained at the time force was used.  See Jones, 963 F.3d at 239 ("[Q]ualified immunity would not immunize an officer for tasing an uncuffed arrestee a second time where the arrestee was no longer resisting and was not posing a threat to the safety of officers or others.").

Burlington, 585 F. Supp. 3d 615, 631-32 (D. Vt. Feb. 2022) (noting that the use of "arm takedowns" without cause constitutes excessive force in violation of clearly established law (citing Jones v. Parmley, 465 F.3d 46, 63 (2d Cir. 2006))).  As such, the court respectfully disagrees with the defendants' contention that this case is "easily distinguishable" from Jones v. Treubig and its progeny.  See Defendants' Reply to Objection to Motion for Summary Judgment ("Defs.' Reply"), at 8-9 (Doc. No. 141).

Accordingly, taking the evidence in the light most favorable to the plaintiff, the court concludes that, although there may not have been a specific case that was "on point", existing precedent at the time of the takedown had clearly established that it was legally impermissible for the officers to execute an arm-bar takedown of Cornelius when he was not actively resisting or posing a threat.  On the plaintiff's version of the facts, "no reasonable officer could believe" that the takedown was lawful.  See Jones, 963 F.3d at 230.  Because there are unresolved facts that are material to the defendants' qualify immunity defense, the court cannot grant summary judgment in their favor.  See Bryant v. City of Hartford, No. 17-CV-01374, 2021 WL 4477311, at *13 (D. Conn. Sept. 30, 2021).  The Motion for Summary Judgment on plaintiff's excessive force claim with respect to Officer Pressley, Officer Howze, and Officer Curry—the officers who engaged in the takedown—is therefore denied.

The court reaches the same conclusion with respect to plaintiff's allegation that Officer Pressley and Officer Luna pulled him up by the handcuffs.  The court has already determined that, accepting plaintiff's version of the facts as true, this use of force would not have been objectively reasonable and would, therefore, constitute a violation of plaintiff's Fourth Amendment rights.  Such conduct would also constitute a

violation of plaintiff's clearly established rights.  As discussed above, the Second Circuit has held that, as of April 2015, it was clearly established that an officer may not use significant force against a defendant that was no longer resisting and who posed no threat to the safety of others or the officers.  See Jones, 963 F.3d at 240; Tracy, 623 F.3d at 98.  Here, there is a genuine issue of material fact as to whether Cornelius was actively resisting before he was allegedly lifted by the handcuffs.  The Second Circuit has also held that, as of July 2014, "an officer's use of excessive force during handcuffing could give rise to a Fourth Amendment claim for excessive force."  Cugini v. City of New York, 941 F.3d 604, 616 (2d Cir. 2019).  It does not appear that there are any "on point" cases from the Second Circuit and Supreme Court holding that pulling an arrestee up by the handcuffs when he or she is not resisting constitutes a violation of clearly established law.  Nonetheless, the court concludes that existing precedent, taken together, had "spoken with sufficient clarity" as of April 2018 that it was clearly established that an officer's pulling a plaintiff up to a standing position by the handcuffs—which can cause significant injury[12]—where the plaintiff was not resisting or posing any threat to anyone's safety, violated the Fourth Amendment.[13]  Mara, 921 F.3d

---

[12] The plaintiff alleges that he suffered various injuries, including "a displaced scaphoid waist fracture of the right wrist".  Second Am. Compl. ¶ 14.

[13] In their Memorandum, the defendants cite Jaffe v. Fitzgerald, a 2009 district court case, for the proposition that "it was not clearly established that officers could not lift the plaintiff by his handcuffs in light of the circumstances confronting them."  See Defs.' Mem. at 18 (citing Jaffe v. Fitzgerald, 06-CV-0317, 2009 WL 804740 (E.D.N.Y. Mar. 27, 2009)).  The court is unpersuaded.  In Jaffe, the court concluded that there was no dispute that the plaintiff was "highly resistant" before the defendant officers pulled her up by her handcuffs.  Jaffe, 2009 WL 804740, at *8.

Here, by contrast, the court has concluded that there is a genuine issue of material fact as to whether the plaintiff was actively resisting before Officer Pressley and Officer Luna allegedly lifted him up by the handcuffs.  Given this material dispute, as well as Second Circuit second precedent that the use of significant force against an unresisting and nonthreatening arrestee violates clearly established rights, the court cannot conclude the defendant officers are entitled to qualified immunity at this juncture.

at 68.  Viewing the facts in the light most favorable to the plaintiff, "no reasonable officer could believe" that it was lawful to pull the plaintiff up by the handcuffs under such circumstances.  See Jones, 963 F.3d at 230.  Because genuine issues of material fact remain, the Motion for Summary Judgment as to the handcuff component of plaintiff's excessive force claim is denied with respect to Officer Pressley and Officer Luna.

      B.     Negligent Infliction of Emotional Distress

The defendants also move for summary judgment on Cornelius' state law claim for negligent infliction of emotional distress.  See Defs.' Mem. at 28-30.  To prevail on a claim for negligent infliction of emotional distress, a "plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm."  Carrol v. Allstate Ins. Co., 262 Conn. 433, 446 (2003) (quoting Montinieri v. S. New England Tel. Co., 175 Conn. 337, 3450 (1978)).  An excessive force claim may also state a claim for negligent infliction of emotional distress.  See Ochoa v. City of West Haven, No. 08-CV-24, 2011 WL 3267705, at *11 (D. Conn. July 29, 2011).

The defendants move for summary judgment as to this claim on the ground that they are entitled to governmental immunity.  See Defs.' Mem. at 28-30.  Generally, governmental immunity applies whenever an officer is performing "discretionary acts".  See Belanger v. City of Hartford, 578 F. Supp. 2d 360, 366-67 (D. Conn. 2008); Mulligan v. Rioux, 229 Conn. 716, 727 (1994).  Indeed, despite plaintiff's assertions to the contrary, the defendant officers were plainly performing "discretionary acts" when they executed the takedown and allegedly pulled him up by the handcuffs.  See

Belanger, 578 F. Supp. 2d at 367 ("The manner in which a police officer makes an arrest fits within the framework of the day to day discretion exercised by police officers.").  Although the plaintiff appears to contend that police officers must adhere to certain policies and guidelines when using force, and that this requirement therefore means the defendants' acts in this case were ministerial rather then discretionary, see Pl.'s Opp. at 29-32, the court is unpersuaded.  "[D]escriptions of general practices or expectations that guide an employee's exercise of discretion do not create a ministerial duty."  Doe v. Town of Madison, 340 Conn. 1, 32 (2021).  Accordingly, the court concludes that the conduct at issue was discretionary in nature.

However, the court agrees with plaintiff that the "identifiable victim-imminent harm" exception to governmental immunity may apply in this case.  Under Connecticut law, municipal employees may be exempt from governmental immunity "where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ."  Evon v. Andrews, 211 Conn. 501, 505 (1989).  "Connecticut courts have held that where, as here, an officer is alleged to have used excessive force against a person, he may be found to have subjected an identifiable person to imminent harm and therefore is not protected from suit by the doctrine of governmental immunity."  Odom v. Matteo, 772 F. Supp. 2d 377, 395 (D. Conn. Jan. 24, 2011) (collecting cases).  Because the court has concluded that there are genuine issues of material fact as to whether the defendants used excessive force against Cornelius, it similarly concludes that there are genuine issues of material fact as to whether the "identifiable victim-imminent harm" exception to governmental immunity applies.

The defendants contend that the plaintiff is barred from asserting the "identifiable victim-imminent harm" exception because he did not plead it in his operative Complaint. See Defs.' Reply at 10-11. The defendants rely primarily on Haynes v. Middleton, a Connecticut Appellate Court decision, which affirmed a judgment by a lower court granting judgment notwithstanding the verdict, on the basis of governmental immunity, because (1) the plaintiff failed to plead the "identifiable victim-imminent harm" exception and (2) there was no finding by the jury that the defendant's negligence subjected the plaintiff to imminent harm. 122 Conn. App. 72 (2010), rev'd 306 Conn. 471 (2012).[14]

The court respectfully disagrees with the defendants that Haynes prohibits Cornelius from raising the "identifiable victim-imminent harm" exception. First, the court finds Haynes distinguishable from the case at bar. There, the plaintiff did not raise the exception until after trial, meaning the jury had no opportunity to determine whether the defendant subjected the plaintiff to imminent harm. Here, by contrast, the plaintiff has raised the exception prior to trial. See Haynes, 122 Conn. App. at 82. Second, at least one court in this Circuit has taken a more flexible approach to the issue, permitting a plaintiff to raise the exception for the first time in response to a defendants' motion to dismiss. Chase v. Nodine's Smokehouse, 360 F. Supp. 3d 98, 120-21 (D. Conn. 2019). Third, while the plaintiff's operative Complaint does not explicitly plead the exception, it clearly alleges facts underlying the exception—namely, that the defendants used excessive force against the plaintiff. See Second Am. Compl. The defendants were,

---

[14] The Connecticut Supreme Court subsequently reversed the Appellate Court, holding that, "[b]ecause the issue of the plaintiffs' failure to plead the identifiable victim, imminent harm exception to discretionary immunity in their complaint or in their reply to the defendant's special defense of governmental immunity had not been raised or briefed prior to oral argument before the Appellate Court," it was not appropriate to set aside the verdict on that basis. See Haynes, 306 Conn. at 473.

therefore, clearly on notice of the facts relevant to the exception.  Taken together, the court cannot conclude, at this stage, that the plaintiff's failure to plead the exception explicitly warrants dismissal of his claim for negligent infliction of emotional distress.[15]

The defendants' Motion for Summary Judgment as to the negligent infliction of emotional distress claim against Officer Pressley, Officer Luna, Officer Curry, and Officer Howze is thus denied.

C.    Abandoned Claims

Finally, the plaintiff appears to have abandoned, either explicitly or implicitly, his remaining claims.  In his Opposition, the plaintiff states that he does not object to dismissal of the section 1981 claim.  See Defs.' Mem. at 5.  The plaintiff's Opposition also does not object or respond to defendant's Motion for Summary Judgment with respect to his intentional infliction of emotional distress and Connecticut Constitution claims.  "[W]hen a counseled party moves for summary judgment, a partial response by the non-movant arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."  See Kovaco v. Rockbestos-Suprenant Cable Corp., 834 F.3d 128, 143 (2d Cir. 2016); see also Taylor v. City of N.Y., 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in

---

[15] The court acknowledges that at least one Connecticut superior court has refused to permit the plaintiff to raise the exception for the first time in opposition to a motion for summary judgment.  Kajic v. Marquez, HHDCV166065320S, 2017 WL 4399631, at *9 (Aug. 16, 2017).  However, for the reasons stated above, the court does not believe, in this specific case, that the plaintiff's failure to explicitly plead the exception warrants dismissal of the claim on governmental immunity grounds.

any way."). Accordingly, the court deems abandoned plaintiff's intentional infliction of emotional distress and Connecticut Constitution claims.

Similarly, the plaintiff does not object or respond to defendants' argument that the failure to intervene claim, as applied to the takedown and the alleged pulling plaintiff up by the handcuffs, fails as a matter of law.[16] Accordingly, the plaintiff's failure to intervene claim is also deemed abandoned.

The plaintiff also states, in his Opposition, that he "does not dispute that Bright had no personal involvement in regard to either the takedown or the dragging the plaintiff up by the handcuffs, [because] [Officer Bright] had departed the room by that time[,]" and he further states that "to the extent any of the plaintiff's claims against Bright require his personal involvement, the plaintiff does not object to the removal of Bright on those specific claims." See Pl.'s Opp. at 24-25. Because these allegations constitute the entirety of plaintiff's properly alleged claims of excessive force in this action, see Section IV.A.3, supra, the court concludes that plaintiff has abandoned his claims against Officer Bright.

The court therefore grants the Motion for Summary Judgment with respect to Count Two (section 1981), Count Four (Connecticut Constitution), and Count Six (intentional infliction of emotional distress). The court also grants the defendants' Motion for Summary Judgment as to plaintiff's failure to intervene claim. Finally, the

---

[16] The plaintiff only objects to dismissal of the failure to intervene claim "in regard to the allegations of excessive force related to holding the plaintiff in the prone position while he was handcuffed[.]" Pl.'s Opp. at 25-26. However, as noted above, the court cannot consider these factual allegations because they were not properly pled in plaintiff's operative Complaint. See Section IV.A.3, supra.

court grants plaintiff's Motion for Summary Judgment as to Officer Bright and dismisses him from this case.

## V.    CONCLUSION

For the reasons stated above, the defendants' Motion for Summary Judgment (Doc. No. 132) is granted in part and denied in part.  The Motion is granted as to Count Two, Count Four, and Count Six against all defendants; granted as to plaintiff's failure to intervene claim against all defendants; granted as to plaintiff's claims against Officer Bright; and denied as to Count One and Count Three against Officer Pressley, Officer Luna, Officer Howze, and Officer Curry.  The Clerk is respectfully directed to terminate Officer Bright as a party in this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 13th day of June 2024.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge